UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC** | **CASE NO. 6:21-CV-02610** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **LA PAPA LOCA LLC, ET AL.** | **MAGISTRATE JUDGE HANNA** |

<u>RULING</u>

Before the Court is a Motion for Default Judgment filed by Plaintiff G&G Closed Circuit Events, LLC ("G&G").[1] Pursuant to its motion, G&G seeks a final default judgment against Defendants La Papa Loca LLC, Cesar Barragan Rangel and Isabel Tomas Marin. For the reasons that follow, the motion is GRANTED.

**I.**
**BACKGROUND**

G&G is a distributor of closed-circuit, pay-per-view boxing and special events in the United States.[2] At all pertinent times, G&G held the exclusive, nationwide, closed-circuit commercial distribution and broadcast rights to the *Saul "Canelo" Alvarez v. Gennady "GGG" Golovkin II Championship Fight Program* ("the Program"), which included all under-card bouts and fight commentary encompassed in the broadcast of the event.[3] The Program was telecast nationwide on Saturday, September 15, 2018.[4] G&G marketed the sub-licensing of the broadcast to commercial establishments throughout North America, including establishments within the State of Louisiana, by which it granted those entities limited sublicensing rights to publicly exhibit

---

[1] ECF No. 12.
[2] ECF No. 1 at 4, ¶ 8.
[3] *Id.* at 9-10, ¶ 20.
[4] *Id.*

the Program within their establishments.[5] Defendants were not granted sublicensing rights or any other rights concerning the Program.[6] On the night of the event at approximately 8:30 p.m., a private investigator employed by Audit Masters entered Defendants' business establishment and found it was displaying the Program.[7] The investigator counted approximately nine people and saw one television "for viewing by patrons" inside the establishment.[8] The investigator attests she did pay any cover charge, she did not see any advertisement or promotion of the telecast in Defendants' business establishment, and there were five or six tables set up in total.[9]

  G&G filed the instant Complaint on August 18, 2021, alleging Defendants violated Section 605 of the Communications Act of 1934, Section 553 of the Cable Communications Policy Act of 1985 (collectively, "the Federal Communications Act"), and Section 2511 of the Federal Wiretap Act. According to the record, Defendants were served with the complaint and summons in September 2021, but they have failed to appear in this matter to date.[10] On November 9, 2021, the Clerk of Court entered default against Defendants.[11] On January 11, 2022, G&G filed the instant Motion for Default Judgment.[12] Jurisdiction exists pursuant to 28 U.S.C. § 1331.

---

[5] *Id.* at 10, ¶ 21.
[6] *Id.*
[7] ECF No. 12-5 at 1, 4.
[8] *Id.* at 1.
[9] *Id.* at 2, 3.
[10] On October 11, 2021, Plaintiff filed returns of service demonstrating that a private process server personally served Rangel on September 13, 2021 and personally served Marin on September 7, 2021. ECF Nos. 6, 7. Plaintiff additionally filed a return of service stating a private process server had personally served La Papa Loca LLC at "103 Gated Trinity Ct Lafayette Louisiana 70506" on September 12, 2021. ECF No. 5. The latter service was purportedly effected by serving La Papa Loca, LLC's "agent for service of process." ECF No. 8 at 1. However, the address listed in the return is different than the address of La Papa Loca's registered agent listed with the Louisiana Secretary of State. *See* ECF No. 12-12. Nevertheless, as Rangel and Marin are officers of La Papa Loca, LLC, the Court finds La Papa Loca, LLC has been adequately served with process. *See* FED. R. CIV. P. 4(h)(1)(B).
[11] ECF Nos. 8–9.
[12] ECF No. 12.

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment against a defendant who has "failed to plead or otherwise defend."[13] If it is established by affidavit or otherwise that a party has failed to plead or defend its case within the time period set forth in FED. R. CIV. P. 12, the Clerk of Court must enter the party's default.[14] After the Clerk of Court enters default, the plaintiff must apply for default judgment.[15] Default judgments are disfavored.[16] They should be granted "only when the adversary process has been halted because of an essentially nonresponsive party."[17] A party is not entitled to a default judgment even when a defendant is technically in default.[18] Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered."[19] When considering whether a default judgment is appropriate, courts should consider "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[20] Finally, Rule 55(b) grants district courts wide latitude in deciding whether to require an evidentiary hearing before entering a default judgment.[21]

---

[13] FED. R. CIV. P. 55(a).
[14] *Id.*
[15] FED. R. CIV. P. 55(b).
[16] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).
[17] *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).
[18] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[19] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.")
[20] *Lindsey* at 893.
[21] FED. R. CIV. P. 55(b)(2). When granting default judgment, damages must be proven at a hearing or "demonstrate[ed] by detailed affidavits establishing the necessary facts." *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979). "If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is

## III.
### DISCUSSION

**A.     Default judgment is procedurally appropriate.**

The Court finds that entry of a default judgment is appropriate, because Defendants have failed to file a responsive pleading or otherwise appear in this case. Defendants' failure to oppose the motion for default judgment or otherwise defend this suit for eleven months mitigates the harshness of a default judgment. Further, the Court is unaware of any facts which would obligate it to set aside default judgment if Defendants were to file such a motion.[22]

**B.     There is a sufficient basis in the record for judgment in favor of Plaintiff.**

G&G cites three statutes in support of its claims: (1) 47 U.S.C. § 605, which, for present purposes, prohibits the unauthorized interception of radio and satellite communications;[23] (2) 18 U.S.C. 2511, which prohibits intentional interception of "any wire, oral, or electronic communication";[24] and (3) 47 U.S.C. § 553(a), which prohibits the unauthorized interception of

---

unnecessary." *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-889-B, 2014 WL 1632158, *3 (N.D. Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 370 (5th Cir. 1993)). Here, the Court finds G&G's damages are determinable through calculation and the affidavits submitted in connection with the motion. Accordingly, the Court finds an evidentiary hearing is unnecessary in this matter.

[22] *See* FED. R. CIV. P. 55(c) (a court may set aside a final default judgment for the reasons provided in Rule 60(b)).

[23] The first sentence of § 605(a) refers to the divulgence or dissemination of "communication by wire or radio." 47 U.S.C. § 605(a). However, G&G does not argue that this sentence applies to this matter, nor is this sentence "traditionally applied in the piracy context because it does not refer to the unauthorized interception or receipt of communications, and it is understood as 'regulat[ing] the conduct of communications personnel.'" *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 n.10 (5th Cir. 2014) (quoting *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540 (5th Cir. 1987). Here, G&G appears to be pursuing a claim under the second sentence of § 605(a), which prohibits the unauthorized reception of "communication by radio," and § 605(b), which makes subsection (a) applicable to certain satellite cable programming.

[24] 18 U.S.C. § 2511(1)(a); *see also* 18 U.S.C. § 2520 (providing for a private right of action for certain violations of 18 U.S.C. § 2511).

"any communications service offered over a cable system."[25] The Court must determine whether Plaintiff's filings provide a sufficient basis for a default judgment under any of these statutes.

First, as to alleged violations of the Wire Tap Act, 18 U.S.C. §§ 2511, 2520, the Court finds G&G has not provided a sufficient basis for default judgment. Section 2520(e) provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[26] Here, Plaintiff's first opportunity to discover the alleged violation was on the same day the violation occurred—September 15, 2018. This suit was filed on August 18, 2021. As suit was filed beyond the two-year prescriptive period, this claim is time-barred.

As to Plaintiff's remaining bases for relief, § 605 provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."[27] Section 605(a)'s reference to "communication by radio" includes the transmission of "satellite cable programming" if the satellite programming is encrypted, an agent has been "lawfully designated for the purpose of authorizing private viewing by individuals," and "such authorization is available to the individual involved."[28] Section 553 states that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[29] "Where, because of the

---

[25] "Stated more simply, for present purposes section 553 prohibits the unauthorized interception of cable services, whereas section 605 prohibits the unauthorized interception of satellite communications." *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-3052, 2014 WL 198159, at *2 (W.D. La. Jan. 14, 2014) (citing *Joe Hand Promotions, Inc. v. Lee*, 2012 WL 1909348, *3 (S.D.Tex.)).
[26] 18 U.S.C. § 2520(e).
[27] 47 U.S.C. § 605(a).
[28] *Id.* at § 605(b).
[29] 47 U.S.C. § 553(a).

defendant's failure to respond, a plaintiff has been unable to determine the method through which the defendant accessed the unauthorized communication, district courts have awarded default judgments in favor of the plaintiff."[30] Here, G&G states it is unaware of exactly how the Program was transmitted to Defendants' place of business, because "the private investigator could not discover that fact," and because Defendants have not participated in this matter.[31]

In order to prevail under either § 553 or § 605, G&G must show: "(1) that the Event was shown in Defendants' Establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licensee."[32] Here, G&G's uncontested statement of material facts and supporting documents establish that G&G was the exclusive licensee of the Program, and that despite failing to acquire a license from G&G, Defendants intercepted and broadcast the Program at their business establishment.[33] Thus, G&G has established a viable claim for relief under the Federal Communications Act. In its motion, G&G solely addresses damages under § 553.[34] Accordingly, the Court will award damages under § 553.

**C.   Damages**

    **1.   Statutory Damages**

Section 553 contemplates an award of either: (1) actual damages suffered by the plaintiff, as well as the recovery of profits gained by the violator as a result of the violation, or (2) statutory

---

[30] *J & J Sports Productions, Inc. v. Tiger Paw Daiquiris & Grill, LLC*, No. 14-268, 2015 WL 1800619, *4 (M.D. La. Apr. 16, 2015); *see also J & J Sports Productions, Inc. v. Thibodeaux*, No. 6:17-CV-01324, 2018 WL 4292017, *4 (W.D. La. Aug. 23, 2018), *report and recommendation adopted*, 6:17-CV-01324, 2018 WL 4291984 (W.D. La. Sep. 7, 2018).
[31] ECF No. 12-2 at 4.
[32] *Joe Hand Promotions, Inc. v. RLPR Management, LLC*, No. 12-cv-2106, 2015 WL 539649, *3 (W.D. La. Feb. 6, 2015) (quoting *J & J Sports Prods., Inc. v. El 33, LLC*, EP-11-CV-519-KC, 2013 WL 164521, at *3 (W.D. Tex. Jan. 14, 2013)).
[33] *See* ECF No. 12-1; *id.* at 12-4 through -15.
[34] ECF No. 12-2 at 4.

damages "in a sum of not less than $250 or more than $10,000 as the court considers just."[35] Further, if the court finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain," the court has the discretion to "increase the award of damages . . . by an amount of not more than $50,000."[36] Courts employ a number of methods to determine an appropriate amount of statutory damages, such as a flat sum, a calculated sum based on the number of patrons in the violator's establishment at the time of the violation, a sum equal to the amount of the appropriate sublicensing fee for the establishment, or a multiple of the sublicensing fee.[37] "The Court's goal is to balance the financial burden that a significant damages award will place on Defendant with Plaintiff's financial harm, the policy and enforcement considerations behind preventing piracy, and the importance of deterrence."[38]

Here, G&G has shown that the sublicensing rate for an establishment such as Defendants' (i.e. with a capacity of one to one-hundred persons) was $2,800.00.[39] The Court finds that statutory damages in an amount that is double the sublicensing fee for lawful broadcast is appropriate.[40] Accordingly, the Court will award G&G statutory damages in the amount of $5,600.00. G&G additionally seeks an award of enhanced statutory damages in the amount of $50,000.00 (the maximum available), because "the defendant, limited liability company, owns and operates a commercial establishment engaged in the sale of food, it televised the Program, Lafayette is a city of over one hundred thousand and LaPapa's members directly benefitted from the violation."[41] Even when there is a lack of direct evidence that a defendant acted willfully and for purposes of

---

[35] 47 U.S.C. § 553(c)(3)(A).
[36] 47 U.S.C. § 553(c)(3)(B).
[37] *See e.g. J&J Sports Productions, Inc. v. Cheers Sports Bar and Grill, LLC*, No. 18-00448, 2019 WL 165712, *4 (M.D. La. Jan. 9, 2019).
[38] *Id.*
[39] ECF No. 12-6 at 3; *see also* ECF No. 12-9 at 2.
[40] *See e.g. Cheers Sports Bar and Grill,* 2019 WL 165712, *4; *RLPR Management*, 2015 WL 539649, *5.
[41] ECF No. 12-2 at 5.

commercial advantage or private financial gain, courts have found the allegation that an innocent, mistaken, or accidental interception of a broadcast is not possible is sufficient to show willfulness.[42] Courts consider five factors in determining an appropriate amount of enhanced damages: "(1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages."[43] Here, G&G has shown that Defendants unlawful interception of the Program was willful and for purposes of commercial advantage or private financial gain.[44] There is no evidence indicating that Defendants engaged in repeated violations, realized substantial unlawful monetary gains, advertised the Program, charged an admission fee, or charged a food and drink premium. The only information provided to the Court regarding G&G's actual damages is that G&G spends significant sums marketing its programs and policing its signals in order to identify and prosecute commercial establishments that pirate its programming.[45] Finally, as previously noted, the evidence shows that Defendants broadcast the Program on one television screen, and there were approximately nine persons inside the establishment.[46] Under these circumstances, the Court finds enhanced damages of $11,200.00 is appropriate, which reflects an award equal to two times the amount of statutory damages awarded.[47]

---

[42] *Cheers Sports Bar* at *4 (quoting *J&J Sports Prods., Inc. v. KCK Holdings, LLC*, CIV.A. 14-00269-BAJ, 2015 WL 4656714, at *5 (M.D. La. Aug. 5, 2015)).
[43] *Id.* (quoting *Joe Hand Promotions, Inc. v. Trenchard*, 3:12CV1099 SRU, 2014 WL 854537, at *4 (D. Conn. Mar. 3, 2014)).
[44] ECF No. 12-1 at 2-3; ECF No. 12-5 at 1; ECF No. 12-6 at 3.
[45] ECF No. 12-2 at 3; ECF No. 12-6 at 2-3.
[46] ECF No. 12-5 at 1.
[47] *See e.g. RPLR Management, LLC*, 2015 WL 539649, *6; *Joe Hand Promotions, Inc. v. Bonvillain*, No. 13-4912, 2013 WL 5935208, at *3 (E.D. La. Nov. 5, 2013).

### 2. Attorney's Fees and Costs

G&G seeks attorney's fees and costs of litigation.[48] Under 47 U.S.C. § 553, courts have the discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[49] Courts use a two-step process to calculate reasonable attorney's fees.[50] First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rate in the community for such work.[51] Second, the court considers whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case, using twelve factors.[52] The party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours expended and the hourly rates.[53]

G&G has submitted a detailed affidavit indicating that its attorney billed 8.2 hours at an unstated hourly rate.[54] G&G has additionally submitted an affidavit from its attorney, Ronnie Berthelot, wherein Mr. Berthelot attests that he has been practicing law for thirty-eight years, he is "AV" rated by Martindale-Hubbel, he finished in the top one-third of his law school class at Louisiana State University, he has consistently devoted more than seventy percent of his practice to civil litigation, and he has tried as first chair more than twenty-three civil jury trials and approximately 111 bench trials.[55] Based upon the foregoing information, the Court finds an hourly

---

[48] ECF No. 1 at 14.
[49] 47 U.S.C. § 553(c)(2)(C).
[50] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).
[51] *Id.*; *see also Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999).
[52] *Heidtman* at 1043. The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*
[53] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).
[54] ECF No. 12-4.
[55] ECF No. 12-15.

rate of $250.00 is appropriate.[56] After considering the applicable factors, the Court finds that the lodestar figure of $2,050.00 is a reasonable award of attorney's fees in this case. G&G further submits that its total costs in this matter are $400.00—the amount charged to file the Complaint.[57] Accordingly, the Court will award a total of $2,450.00 in attorney's fees and costs.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion for Default Judgment filed by Plaintiff, G&G Closed Circuit Events, LLC, is GRANTED. Plaintiff is awarded damages of $5,600.00 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), $11,200.00 pursuant to 47 U.S.C. § 553(c)(3)(B), attorney's fees in the amount of $2,050, and $400.00 in costs, for a total award of $19,250.00.

THUS DONE in Chambers on this 12th day of July, 2022.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[56] *See e.g. Thibodeaux*, 2018 WL 4292017, at *7; *J&J Sports Productions, Inc. v. Boil & Roux Kitchen, LLC*, No. 17-00276, 2018 WL 1089267, *3 (M.D. La. Feb. 26, 2018).
[57] ECF No. 12-4 at 1.